UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., a Delaware corporation,

Plaintiff,

v.

JOHN DOES 1–50,

Defendants.

No. 2:19-cv-1445

COMPLAINT

## I.     INTRODUCTION

1.      Amazon.com, Inc. ("Amazon") is one of the most well-known and trusted brands in the world.  John Does 1-50 ("Defendants") operate an unlawful advertising scheme that infringes Amazon's trademarks in order to generate fraudulent traffic so as to unlawfully generate fees from affiliate networks and online advertisers.  Defendants' scheme harms Amazon, the advertisers who pay fees for Defendants' fraudulently generated traffic, and the numerous victims who receive Defendants' emails and visit their websites.

2.      Defendants are affiliate marketers who refer people to websites for money. Broadly speaking, affiliates source traffic (i.e., people) for websites through a variety of means, including, relevant to this case, email campaigns.  The affiliate then refers this traffic to an advertiser, or to a third-party such as an affiliate network who sends it to an advertiser.

3.      Defendants' scheme starts with unauthorized emails sent to victims.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

Defendants' emails heavily use Amazon's trademarks, and often contain an offer for an Amazon gift card. Defendants generally send these emails from email addresses designed to deceive victims into believing they are from Amazon, including amazon@, prime@, and primememberbonus@. Defendants intentionally design their emails to entice victims to click the link in the email.

4. By clicking the link in Defendants' emails, victims are routed to a website that contains a purported "survey." The survey often greets the victim as "Amazon Shopper." Like the email, this survey uses Amazon's trademarks and promises a "reward" for a victim's participation. After answering questions that relate to Amazon and its business, the victim is referred to other websites to claim the "reward." However, there is no "reward," and victims are, instead, directed to an advertiser's website where they can purchase a product that has no relation to Amazon. Defendants monetize this traffic using accounts with multiple affiliate networks through which they refer the fraudulent traffic.

5. As a result of Defendants' scheme, Defendants are liable to Amazon for trademark infringement, false designation of origin and association, false advertising, and trademark dilution. Amazon brings this lawsuit to stop Defendants' unlawful scheme and hold them accountable for the harm they have caused.

## II.   PARTIES

6. Amazon is a Delaware corporation with its principal place of business in Seattle, Washington. Through its subsidiaries, Amazon owns and operates the Amazon.com website and equivalent international websites.

7. The true identities of Defendants are not presently known to Amazon. On information and belief, Defendants are individuals and entities working in active concert to knowingly and willfully run the scheme alleged in this Complaint, including by using Amazon's trademarks and brand to deceive victims.

COMPLAINT - 2
(2:19-cv-1445)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

### III.   JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over Amazon's claims for trademark infringement (15 U.S.C. § 1114), violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and trademark dilution (15 U.S.C. § 1125(c)) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

9.     The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to this District, and Amazon's claims arise from those activities.  On information and belief, Defendants' scheme specifically targets users in this District by sending emails to victims located in this District, and through websites that actively solicit interaction from users in this District by deceiving them into participating in online surveys.  Defendants' scheme also infringed Amazon's intellectual property, which foreseeably caused harm to Amazon in this District.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

11.     Pursuant to Local Civil Rule 3(d), intra-district assignment to the Seattle Division is proper because the claims arose in this Division where (a) Amazon resides, (b) the injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

### IV.   FACTS

**A.     Amazon is a Trusted Brand**

12.     Amazon is a highly trusted brand.  Among other businesses, Amazon runs an e-commerce website.

13.     In connection with its online sales, Amazon offers gift cards, promotions, and a variety of services.  One of Amazon's most popular offerings is Prime, which is a paid membership program that provides discounts on shipping and free access to digital content (to name just two of Prime's features).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

14.     Amazon emails customers in connection with its products and services.  As a result, Amazon's customers have come to expect to receive email communications from Amazon, to use Amazon's services online, and to interact with Amazon online.

15.     Amazon's products and services are readily identifiable to consumers around the world because of the company's substantial and years-long investment of time, money, and other resources in Amazon's brand, including the development of valuable intellectual property.

16.     Amazon exclusively owns numerous U.S. trademark registrations and pending applications.  These trademarks are a critical component of a consumer's ability to readily identify Amazon products and services.

17.     As alleged in this Complaint, the following trademarks and service marks (collectively "Amazon Trademarks") were unlawfully used to further Defendants' scheme:

| **Mark** | **Registration No. (International Classes)** |
|---|---|
| AMAZON | 2,738,837 (Int. Cl. 38) <br><br> 2,832,943 (Int. Cl. 35) <br><br> 4,907,371 (Int. Cls.:35, 41 and 42) |
| AMAZON.COM | 2,167,345 (Int. Cl. 35) <br><br> 2,559,936 (Int. Cl. 35, 36, 42) <br><br> 2,633,281 (Int. Cl. 38) <br><br> 2,837,138 (Int. Cl. 35) |
| **amazon** | 5,508,999 (Int. Cl. 35) |

COMPLAINT - 4
(2:19-cv-1445)

| | |
|---|---|
| | 3,904,646 (Int. Cl. 35) |
| PRIME | 5,218,535 (Int. Cl. 35) 5,489,315 (Int. Cl. 42) 5,218,536 (Int. Cl. 41) |

18.     The Amazon Trademarks have been used exclusively and continuously by Amazon, and have never been abandoned.  The above U.S. registrations for the Amazon Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Amazon Trademarks constitute prima facie evidence of their validity and of Amazon's exclusive right to use the Amazon Trademarks pursuant to 15 U.S.C. § 1057(b).

**B.     Affiliate Marketing Abuse**

19.     A successful website requires "traffic," which is a term used to describe people who visit a website.  Websites need traffic like physical retailers need visitors.  Retail stores need to generate foot traffic in order to generate sales opportunities, and similarly, websites need to generate traffic in order to monetize the website.

20.     Affiliate marketing arose from the need to source relevant traffic for websites. Broadly speaking, an affiliate publishes material to generate traffic on behalf of an advertiser (i.e., the party who wants the traffic for their website).

21.     An affiliate can source traffic through a variety of means, including, relevant to this case, email campaigns.

22.     The demand for traffic also spurred the growth of entities who help connect affiliates and advertisers.  One such example is an affiliate network, who acts as an intermediary between the advertiser and the affiliates.  In this model, an advertiser approaches a

COMPLAINT - 5
(2:19-cv-1445)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

single network, who then contracts with one or more affiliates to provide the traffic desired by the advertiser.

23.     In email campaigns, like the ones at issue in this case, affiliates use domains that are designed to redirect the user to another domain.  These redirect domains do not render content, such as a webpage, in a user's browser and are generally not visible to the user. Therefore, a user clicking on the link in the affiliate's email sees only the final landing page, but they may have passed through multiple redirect domains to get there.

24.     These redirects are used for a variety of legitimate purposes, such as tracking the traffic generated from a campaign and referring traffic to another company.

25.     However, they can also be used for malicious purposes such as stripping the traffic of information identifying its source.

26.     In one common form of affiliate abuse, affiliates generate traffic by impersonating well-known brands (such as Amazon).  Affiliates exploit the brand's recognition with customers to entice victims to click through to a third-party advertiser's website.  The affiliate is then paid for this fraudulent traffic.

27.     The generation of traffic through the misuse of a brand's intellectual property harms everyone involved (except the affiliate).  It harms the victim who is deceived by the affiliate's message or website, the brand whose intellectual property is associated with a fraudulent campaign, and the advertiser who pays for the traffic.

**C.      Defendants' Unlawful Affiliate Marketing Scheme**

28.     Defendants are engaged in a widespread, fraudulent marketing scheme that bombards victims with unauthorized emails and abuses Amazon's brand to generate traffic. Defendants then profit from fees for this fraudulently generated traffic paid to them by affiliate marketing networks and advertisers.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

**1.     Defendants First Send Victims Unauthorized Emails Using Amazon's Trademarks**

29.     Defendants' scheme begins with emails that display the Amazon Trademarks and offer victims an Amazon gift card or "reward."  Defendants send emails to victims in Washington, and, on information and belief, elsewhere in the United States.

30.     Defendants intentionally designed their emails to appear as though they originate with Amazon.  Among other things, Defendants often thank the victim for their "recent Purchase on Amazon."  Defendants also claim that the victim's engagement with the email will help "customers pick the right products on Amazon."  Defendants even use misleading email subject lines such as, "Add more to your cart with an extra hundred from your frends [sic] at Amazon," "Amazon has a surprise for you!," "Congrats on your Amazon Loyalty Voucher!" and "We just added a one-time-credit to your Amazon account."

31.     Partial screenshots from examples of Defendants' emails are below:



Thank you for your recent Purchase on Amazon.

Your invited to review your product and redeem your new **50-reward.**

Your feedback helps customers pick the right products on Amazon.

It' s an quick process! You are just one click away to activate your $50 voucher.

See Here

COMPLAINT - 7
(2:19-cv-1445)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax





32.     Defendants send these emails from email addresses intended to deceive recipients into believing the emails are from Amazon.  Defendants display email addresses such as:  amazon.perks@fondationeaccess.com, amazon.survey@fasionsitejerseys.com, amazon@mtzautowreckin.com, amazon@diableimmortal.com, amazon@frnchest.com, amazon@merilledgeinvestment.com, amazonprimereward.status@frnchest.com, prime.bonus@bellasfoward.com, prime@gossiping.bq275.com, prime@latimer.ok301.info, primemember@decipherer.pl923.com, primemembersbonus@icontecs.com, and

COMPLAINT - 8
(2:19-cv-1445)

1    prime@hysterectomy.keerog4.com.

2        33.    Defendants registered the domains used to send these emails with four different

3    registrars:  NameSilo, LLC[1]; Namecheap, Inc.[2]; Interweb Advertising, Inc. (dba

4    ProfileBuilder.com)[3]; and GoDaddy.com, LLC.[4]

5        34.    In many cases, Defendants sent the emails using a different email address from

6    the one displayed in the "from" line of the email.  Specifically, Defendants used a different

7    identifier and added a subdomain to the email address used to send the email.  For example,

8    Defendants sent an email that displayed the sender's email address as

9    "amazon@diableimmortal.com," but the email was actually sent from the email address

10   "postmaster@temporal.diableimmortal.com."  In these cases, Defendants hosted the

11   subdomains with a company called DedicatedNOW, Inc. at the IP address 65.181.124.184.

12       35.    In other cases, Defendants sent the emails from domains (kerrog4.com,

13   bq275.com, and pl923.com) hosted with a company called BitAccel, LLC.

14                   **2.    Defendants Refer Victims Through Multiple Domains**

15       36.    The purpose of Defendants' emails is to entice victims to click a link contained

16   within the message.  Upon clicking that link, the victim is redirected through a series of two or

17   three domains that do not render content in the victim's browser, but serve to redirect the

18   victim to Defendants' survey.  These redirect domains also hide Defendants' identities, protect

19   their infrastructure from being flagged as fraudulent, and help track the traffic.

20       37.    Defendants have used a number of redirect structures to funnel traffic.  In one

21   example, Defendants routed victims through 2934trk.com then ballerclick.com.  In a second

22   example, Defendants sent victims through prematrinela.com, tboksolutions.com, or besttre.com

23   then to loadzucchetto.com.  In yet a third example, Defendants directed traffic through

---

[1] For example:  fasionsitejerseys.com, mtzautowreckin.com, diableimmortal.com, frnchest.com, merilledgeinvestment.com, bellasfoward.com, and toyrunssweeps.com.
[2] For example:  bq275.com, ok301.info, pl923.com, and keerog4.com.
[3] For example:  icontecs.com.
[4] For example:  fondationeaccess.com.

COMPLAINT - 9
(2:19-cv-1445)

kutcloud.com then clicktrackr.com then toltrack.com.

38.    The domains 2934trk.com, prematrinela.com, tboksolutions.com, and kutcloud.com were registered with Name.com, Inc.

39.    The domain besttre.com was registered with GoDaddy.com LLC.

40.    The domain cliktrackr.com was registered with Google, LLC, which also hosts the domain.

41.    The domain toltrack.com is connected to Clickbooth.com, LLC.

42.    The domain 2934trk.com uses services from HitPath (which is an online marketing tracking platform run by Webapps, LLC) to help track Defendants' fraudulently generated traffic.

43.    The domain loadzuchetto.com uses services from Thrive Tracker (which is also an online marketing tracking platform run by Clickbooth.com, LLC) to help track Defendants' fraudulently generated traffic.

44.    The domain ballerclick.com was hosted with OVHCloud (which operates a company called OVH US LLC) and is currently hosted with Choopa, LLC.

### 3.    Defendants Deceive Victims into Clicking Through a "Survey" By Using Amazon's Brand

45.    After being referred through Defendants' redirect domains, the victim arrives on Defendants' survey page that heavily uses Amazon's brand.  Defendants use multiple versions of the survey page, but all versions follow the same pattern.

46.    When a victim first arrives on Defendants' landing page, the victim sees a greeting that often addresses the victim as "Amazon Shopper."  For example, one version of this message begins "Congratulations Amazon Shopper!" and another version begins "Dear Amazon Shopper."  The message invites the victim to complete a survey about Amazon in order to get a "reward" or "offer."  Screenshots of two versions of Defendants' message are below:

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24



25

26

27

47.     After clicking "Start Survey" (or a similar button), victims are led through a survey that uses the Amazon Trademarks and other indications of Amazon's brand to deceive victims into believing the survey originates with or is sponsored by Amazon.

48.     Among other things, the survey prominently displays Amazon's trademark "amazon," either stylized or in plain text, at the top of each page.  The survey's heading reads "amazon 2019 Shopper Survey," "amazon Shopper Survey," or "Satisfaction Survey about amazon."

49.      Defendants also intentionally mimic Amazon's designs and color schemes, including Amazon's navy blue banner heading and gold rectangular buttons to indicate options victims can select.

50.     Defendants' survey asks questions about shopping on Amazon such as, "Would you recommend Amazon to a friend?," "Are the products you buy from Amazon usually in-stock at the time of purchase?" and "When is the last time you bought a product from Amazon?"  Defendants intentionally craft these questions to appear as though they are collecting information for Amazon.  However, the survey is not affiliated with Amazon, and the victims' responses are not provided to Amazon.

51.     Partial screenshots of questions from three versions of Defendants' survey are below:



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21
22
23



52.     Below Defendants' survey questions is a message that states the website is "not affiliated with or endorsed by Amazon" and does not have a right to use the trademarks.  This disclaimer is in substantially smaller font than is used on the rest of the website.

24
25
26
27

COMPLAINT - 13
(2:19-cv-1445)

53.     In fact, the inclusion of this language demonstrates Defendants' knowledge of Amazon's exclusive right to use the Amazon Trademarks, and admits that Defendants lack any right or authority to use them.  This purported disclaimer also demonstrates that Defendants' design, display, and use of the Amazon Trademarks on their survey page is intentional and willful.

54.     Notwithstanding Defendants' ineffective disclaimer, the rest of the survey page is expressly designed and intended to give victims the false impression that it originates with, is affiliated with, or is sponsored by Amazon.  It is also intentionally designed to deceive victims into believing that completing the survey will lead victims to a reward.

55.     Defendants have used at least three domains to render their survey page: globalsurveyscenter.com, tadomin.com, and surveyee.com.  The domain globalsurveyscenter.com was hosted by OVHCloud and is now hosted by Choopa, LLC.  The domain tadomin.com uses services provided by Cloudflare, Inc., and is hosted by Mean Servers Limited.  The domain surveyee.com was registered through GoDaddy.com, LLC and is hosted by Rackspace, Inc.

56.     One version of Defendants' survey page used Google Analytics to track victims' clicks through the survey.  The unique identifier for Defendants' account is UA-136535417-1.

### 4.     Defendants Send Victims Who Complete the "Survey" to Affiliate Networks and Advertisers

57.     Upon completing the survey, victims are presented with a page where they supposedly claim their "reward" or "offer" for completing the survey.  This rewards page displays numerous products that are intentionally designed to appear as Amazon product listings.  Defendants present these products as free or heavily discounted "rewards" or "offers."  A partial screenshot of one version of this page is below:

*[Image on following page]*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   58.    Similar to what happens after a victim clicked the link in the original email,

19   clicking one of Defendants' "rewards" or "offers" sends the victim through a series of redirect

20   domains, one of which is a domain controlled by an affiliate network.  The affiliate network

21   then redirects the victim to an advertiser where victims can purchase the product they selected

22   on Defendants' "reward" page.

23   59.    Four of the affiliate networks Defendants directed traffic to were Express

24   Revenue, Inc., Clickbooth.com, LLC, Traverse Data, Inc., and BDEX, LLC.

25   60.    A second redirect domain Defendants used was nsxrenkz.com, which uses

26   Clickbooth.com, LLC's Thrive Tracker services.

27

COMPLAINT - 15
(2:19-cv-1445)

# V.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Trademark Infringement (15 U.S.C. § 1114)

61.    Amazon incorporates by reference the factual allegations contained in Section I–IV as though set forth herein.

62.    Defendants' activities infringe the Amazon Trademarks.

63.    Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

64.    Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Amazon.

65.    Defendants use the Amazon Trademarks in commerce in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, or authenticity of Defendants' emails and websites.

66.    Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that Defendants' emails and websites originate with or are authorized by Amazon, thereby harming Amazon and the public.

67.    At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, their authority to use the Amazon Trademarks and the confusion that the use of those trademarks would have on consumers as to the source, sponsorship, affiliation or approval by Amazon of Defendants' websites.

68.    Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

69.    As a result of Defendants' wrongful conduct, Amazon is entitled to recover its

COMPLAINT - 16
(2:19-cv-1445)

actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.  Alternatively, Amazon is entitled to statutory damages under 15 U.S.C. § 1117(c).

70.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Amazon has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Amazon Trademarks are unique and valuable property; (b) Defendants' infringement constitutes harm to Amazon's reputation and goodwill such that Amazon could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing websites; and (d) Defendants' wrongful conduct, and the resulting harm to Amazon, is continuing.

## SECOND CAUSE OF ACTION

### False Designation of Origin and False Advertising (15 U.S.C. § 1125(a))

71.     Amazon incorporates by reference the factual allegations contained in Section I–IV as though set forth herein.

72.     Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

73.     Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify, products and services from Amazon.

74.     Amazon has also designed distinctive and aesthetically pleasing displays, logos, icons, and graphic images (collectively, "Amazon designs") for its websites.

75.     Defendants' wrongful conduct includes the use of the Amazon Trademarks, Amazon's name, and/or imitation designs (specifically displays, logos, icons, and/or graphic

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

designs virtually indistinguishable from the Amazon designs) in connection with Defendants' commercial advertising or promotion.

76.     Defendants have used, and continue to use, the Amazon Trademarks, Amazon's name, and/or imitation designs to deceive customers.  On information and belief, Defendants' wrongful conduct misleads and confuses their users and the public as to the origin and authenticity of the goods and services advertised, marketed, offered or distributed in connection with Amazon's trademarks, name, and imitation visual designs, and wrongfully trades upon Amazon's goodwill and business reputation.  Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false advertising, all in violation of 15 U.S.C. § 1125(a).

77.     Defendants' acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

78.     Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

79.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

80.     As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

### THIRD CAUSE OF ACTION

**Trademark Dilution (15 U.S.C. § 1125(c))**

81.     Amazon incorporates by reference the factual allegations contained in Section I–IV as though set forth herein.

82.     Amazon has exclusively and continuously promoted and used the Amazon Trademarks.  As one of the world's most well-known technology companies, the Amazon Trademarks have become famous, distinctive and well-known symbols of Amazon—well before any of the Defendants began using the Amazon Trademarks in association with their goods or services unaffiliated with Amazon through the Defendants' illegal use and infringement of the Amazon Trademarks.

83.     The actions of the Defendants including, but not limited to, their unauthorized use of the Amazon Trademarks in commerce to deceive users into believing Defendants' emails and websites are affiliated with Amazon are likely to cause dilution of the Amazon Trademarks by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

84.     As a result of Defendants' willful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a).

85.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

### VI.     PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

A.     That the Court enter judgment in Amazon's favor on all claims;

B.     That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, employees, successors and assigns, and all others in active concert or

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

participation with them, from:

      (i)    Using the Amazon Trademarks in connection with any offer, survey, commercial email, marketing campaign, or website;

      (ii)    Using any other indication of Amazon's brand in connection with any offer, survey, commercial email, marketing campaign, or website;

      (iii)    Making any statement of an affiliation or connection to Amazon in connection with any offer, survey, commercial email, marketing campaign, or website; or

      (iv)    assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iii) above;

C.    That the Court enter an order requiring Defendants to provide Amazon a full and complete accounting of all gross and net amounts earned in connection with the scheme alleged in this Complaint;

D.    That Defendants' profits from the unlawful scheme alleged in this Complaint be disgorged pursuant to 15 U.S.C. § 1117(a);

E.    That Defendants be required to pay all general, special, actual, and statutory damages which Amazon has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(a)–(b), or otherwise allowed by law;

F.    That Defendants be required to pay the costs of this action and Amazon's reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117 or otherwise by law; and

G.    That the Court grant Amazon such other, further, and additional relief as the Court deems just and equitable.

COMPLAINT - 20
(2:19-cv-1445)

DATED this 10th day of September, 2019.

DAVIS WRIGHT TREMAINE LLP

By  *s/ Bonnie E. MacNaughton*
Bonnie E. MacNaughton, WSBA #36110

*s/ James H. Wendell*
James H. Wendell, WSBA #46489

*s/ Sara A. Fairchild*
Sara A. Fairchild, WSBA #54419
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Phone:  (206) 622-3150
Fax: (206) 757-7700
Email:    bonniemacnaughton@dwt.com
                jamiewendell@dwt.com
                sarafairchild@dwt.com

*Attorneys for Plaintiff Amazon.com, Inc.*

COMPLAINT - 21
(2:19-cv-1445)